UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

A.J.H. a minor, by ALISHA MACK,

                Plaintiff,                5:16-CV-0897
                                                        (WBC)
v.

COMMISSIONER OF SOCIAL SECURITY

                Defendant.
_____

APPEARANCES:                                      OF COUNSEL:

OLINKSY LAW GROUP                    HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
300 S. State St., Ste. 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.         SIXTINA FERNANDEZ, ESQ.
OFFICE OF REG'L GEN. COUNSEL-REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 12, 13.)

Currently before the Court, in this Social Security action filed by Alisha Mack ("Plaintiff") on behalf of a minor, A.J.H. ("Claimant") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g), are the

parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 9, 10.) For the reasons set forth below, it is ordered that Plaintiff's motion be denied and Defendant's motion be granted.

I.     RELEVANT BACKGROUND

   A.     Factual Background

Claimant was born in 2008, at the time of filing Claimant was a preschooler and at the time of the hearing she was a school-age child. 20 C.F.R. § 416.926a(g). Claimant's alleged disability consists of cerebral palsy. (T. 279.)

   B.     Procedural History

On September 25, 2012, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act on Claimant's behalf. (T. 275.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On March 26, 2014, and again on October 23, 2014, Plaintiff and Claimant appeared before the ALJ, John M. Lischak. (T. 35-95, 96-121.) On February 21, 2014, ALJ Lischak issued a written decision finding Claimant not disabled under the Social Security Act. (T. 15-34.) On May 16, 2016, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

   C.     The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law. First, the ALJ found that Claimant was a "preschooler" at the time of filing and a "school-age child" at the time of the hearing pursuant to 20 C.F.R. §

416.926a(g). (T. 21.) Second, the ALJ found that Claimant had not engaged in substantial gainful activity since the application date. (*Id.*) Third, the ALJ found that Claimant suffered from the severe impairment of cerebral palsy. (*Id.*) Fourth, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I ("the Listings"). (*Id.*) Fifth, the ALJ found that Claimant did not have an impairment or combination of impairments that functionally equaled an impairment set forth in the Listings. (T. 21-30.) Sixth, and finally, the ALJ concluded Claimant had not been disabled, as defined by the Social Security Act, since September 25, 2012, the date her application was filed. (T. 24.)

## II.    THE PARTIES' BRIEFINGS

### A.    Plaintiff's Arguments

Generally, in support of her motion for judgment on the pleadings, Plaintiff makes two arguments. First, Plaintiff argues the ALJ should have found Claimant disabled under Listing § 111.07 for cerebral palsy. (Dkt. No. 9 at 13-15 [Pl.'s Mem. of Law].) Second, and lastly, Plaintiff argues the ALJ's credibility determination was unsupported by substantial evidence. (*Id.* at 15-16.)

### B.    Defendant's Argument

Generally, in support of her cross-motion for judgment on the pleadings, Defendant makes two arguments. Defendant argues substantial evidence supported the ALJ's finding that Claimant's impairment did not meet or equal the requirements of a Listed impairment. (Dkt. No. 10 at 5-11 [Def.'s Mem. of Law].) Second, and lastly,

3

Defendant argues the ALJ properly evaluated the credibility of Plaintiff and Claimant. (*Id.* at 11-13.)

## III. RELEVANT LEGAL STANDARD

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *see Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both

sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

An individual under the age of eighteen (18) is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity...." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. *See* 20 C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, No. 02-CV-3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924(b); *Kittles*, 245 F. Supp. 2d at 488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. *See* 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the child has not engaged in substantial gainful activity, the second step of the test next requires examination of whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. *See* 20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. In essence, "a child is [disabled under the Social Security Act] if his impairment is as severe as one that would prevent an adult from working." *Zebley v. Sullivan*, 493 U.S. 521, 529, 110 S. Ct. 885, 890 (1990).

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether it meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). *Id.* Equivalence to a listing can be either medical or functional. *See* 20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability and the twelve-month durational requirement is satisfied, the child will be deemed disabled. *See* 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

Analysis of functionality is informed by consideration of how a child functions in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include: (i) [a]cquiring and using information; (ii) [a]ttending and completing tasks; (iii) [i]nteracting and relating with others; (iv) [m]oving about and manipulating objects; (v) [c]aring for [oneself]; and (vi) [h]ealth and physical well-being. *See id*.

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

## IV. ANALYSIS

### A. Listing § 111.07

The SSA disability listing for cerebral palsy reads as follows:

Listing § 111.07 Cerebral Palsy. With:

    A. Motor dysfunction meeting the requirements of §§ 101.02 or 111.06; or
    B. Less severe motor dysfunction (but more than slight) and one of the following:
        1. IQ of 70 or less; or
        2. Seizure disorder, with at least one major motor seizure in the year prior to application; or
        3. Significant interference with communication due to speech, hearing or visual defect; or
        4. Significant emotional disorder.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 111.07[1].

Listing § 101.02 requires that a claimant have a major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity … and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imagining of joint space narrowing, bony destruction, or ankyloses of the affected joint(s). With:

    A. Involvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 101.00B2b; or
    B. Involvement of one major peripheral joint in each upper extremity, as defined in 101.00B2c.

20 C.F.R., Pt. 404, Subpt. P, App. 1, Listing § 101.02.

Listing § 111.06 Motor dysfunction (due to any neurological disorder) requires:

Persistent disorganization or deficit of motor function for age involving two extremities,

---

[1] The Childhood Listing for Cerebral Palsy changed effective September 28, 2016. (https://www.ssa.gov/disability/professionals/bluebook/111.00-Neurological-Childhood.htm#111_07). In addition, effective March 27, 2017, many other Regulations and SSRs cited herein have changed. Nonetheless, because Plaintiff's social security application was filed before the new Regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier Regulations and SSRs.

which (despite prescribed therapy) interferes with age-appropriate major daily activities and results in disruption of:

> A. Fine and gross movements; or
> B. Gait and station.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 111.06.

At step three the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled a Listing. (T. 21.) The ALJ stated he considered Listing § 111.07; however, he determined the record did not have evidence of a motor dysfunction meeting the requirements of § 101.02 or § 111.06, an IQ of 70 or less, a seizure disorder, a significant inference with communication, or significant emotional disorder. (*Id.*) The ALJ further relied on the opinion of the non-examining State agency medical expert, Sree Devi Chandrasekhar, M.D., that Claimant did not meet or medically equal the requirements of any of the Listings. (*Id.*)

Plaintiff argues that the ALJ erred in his step three analysis and determination. (Dkt. No. 9 at 13-15 [Pl.'s Mem. of Law].) Plaintiff argues the ALJ failed to follow the Regulations because he did not perform the required analysis, he failed to discuss Claimant's symptoms and compare them to the requirements of the Listing, and he failed to provide any explanations as to why the Listing was not satisfied. (*Id.* at 15.) Plaintiff argues that evidence in the record supports the determination that Claimant's impairment satisfied the criteria under Listing § 111.06 because Claimant's impairment interfered with major daily activities and disrupted her movement and gait. (*Id.* at 14.)[2]

---

[2] Plaintiff's argument focuses solely on meeting the requirements of Listing § 111.07 Cerebral Palsy with motor dysfunction under the requirements of paragraph A and meeting the requirements of Listing § 111.06. Plaintiff does not argue Claimant meets or equals the requirements of Listing § 111.07 with the criteria of Listing § 101.02, or Listing § 111.07B. (Dkt. No. 9 at 13-15 [Pl.'s Mem. of Law].)

9

The ALJ did not commit legal error in his step three evaluation. An ALJ's failure to provide express rationale at step three of the determination is not *per se* error requiring remand. Where other portions of the ALJ's decision demonstrate that substantial evidence supports the ALJ's step three determination, remand for clarification is not necessary. *See Salmini v. Comm'r Soc. Sec.,* 371 F. App'x. 109 (2d Cir. 2010); *see Solis v. Berryhill*, No. 16-1692, 2017 WL 2416900, at *2 (2d Cir. June 5, 2017) ("Although the ALJ did not explicitly discuss Listing 11.14, his general conclusion [that Solis did not meet a listed impairment] is supported by substantial evidence."); *see Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982) ("[T]he absence of an express rationale does not prevent us from upholding the ALJ's determination regarding appellant's claimed listed impairments, since portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence.").

At step three, the ALJ provided an express rationale for his determination. (T. 21.) He stated he considered Listing § 111.07, but determined Claimant did not meet the requirements, and indicated he relied in part on Dr. Chandrasekhar's opinion that Plaintiff did not meet a Listing. (*Id.*) Further, the ALJ's step three determination was supported by substantial evidence in the record, as demonstrated in other portions of the ALJ's decision.

Although Claimant had deficits in motor functioning, and Plaintiff outlines evidence in the record which could support her conclusions, substantial evidence in the record supported the ALJ's determination that such deficits did not meet Listing level criteria. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see*

*also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

    The ALJ acknowledged that Claimant had documented problems with weakness, stability, spasticity, coordination, balance, and fine and gross motor skills. (T. 27.) For example, David Kanter, M.D., noted "spasticity affects gait, standing, balance." (T. 455.) Physical therapy notations from February 2013, indicated that Claimant had "poor" gross motor skills. (T. 321.) However, as outlined by the ALJ, despite these problems the record indicated that Claimant could perform age appropriate gross and fine motor activities. (T. 27.) Indeed, consultative examiner, Kalyani Ganesh, M.D., observed that Claimant dragged her left lower extremity, but was able to run. (T. 534.) Dr. Ganesh noted Claimant was able to bounce a ball and ride a bike with training wheels. (T. 535.) An examination by Claimant's pediatrician on November 8, 2012, indicated Claimant's balance and gait were intact. (T. 451.) Treatment notations from Claimant's four year well child visit indicated Claimant could catch a ball, walk on tiptoe, and jump/hop. (T. 444.)

    The record contains medical evidence that despite left sided weakness, Claimant maintained the ability to perform fine manipulation. Dr. Ganesh observed that Claimant's fine motor activity of hands was age appropriate. (T. 535.) Dr. Ganesh also observed that Claimant could do zippers and buttons, was able to tie, and strength in

both hands was age appropriate. (T. 535.) Overall, Dr. Ganesh opined Claimant had mild to moderate limitations in her ability to perform age appropriate activities. (T. 535.) Treatment notations from Claimant's four year well child visit indicated Claimant could cut and paste, dress and undress, and draw people. (T. 444.)

In addition, Claimant's teacher noted she only had a "slight problem" moving her body from one place to another, moving and manipulating things, demonstrating strength/coordination/dexterity, managing pace of physical activities or tasks, showing a sense of her body's location and movement in space, and integrating sensory input with motor output. (T. 371.) The teacher wrote that Claimant was "on the move a lot" and "thinks nothing of standing on a chair and reaching too far." (*Id.*) She also noted Claimants trips "over shoe laces," and runs instead of walks. (*Id.*)

Here, the ALJ provided an explanation for his step three determination stating he considered the Listing and relied on Dr. Chandrasekhar's opinion. Further, other portions of the ALJ's decision demonstrated that substantial evidence supported his step three determination. Although Plaintiff outlines evidence in the record which supported her contention, substantial evidence in the record ultimately supported the ALJ determination. Therefore, the ALJ's step three determination is upheld.

### B. The ALJ's Credibility Determination

A claimant's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a claimant's] subjective complaints without question; he may exercise discretion in weighing the

credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms. *See* 20 C.F.R. § 416.929. First, the ALJ must determine whether, based on the objective medical evidence, a claimant's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 416.929(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms. 20 C.F.R. § 416.929(c)(3)(i)-(vii).

Here, the ALJ determined that Claimant's medically determinable impairment could reasonably be expected to produce her alleged symptoms; however, statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (T. 22.) The ALJ stated that "allegations were not entirely supported by the claimant's test results, therapist's reports, IEPs, or demonstrated abilities." (*Id.*)

Plaintiff argues the ALJ failed to perform an evaluation of the credibility of Plaintiff's assertions as required by the Regulations, and instead supplied only a vague and unsupported conclusion. (Dkt. No. 9 at 15-16 [Pl.'s Mem. of Law].)

The ALJ did not err in his credibility analysis or determination. Here, the ALJ discussed the medical and non-medical evidence in the record, as well as Plaintiff's testimony, regarding Claimant's abilities and limitations. (T. 22-23.) The ALJ's conclusion was neither vague nor unsupported. The ALJ outlined and evaluated the medical evidence in the record provided by Dr. Ganesh, consultative examiner Rebecca Fisher, Psy.D., and Dr. Chandrasekhar. (T. 22-24.) The ALJ also discussed the opinion evidence provided by Claimant's teachers and IEP reports. (T. 22-30.) Throughout the decision the ALJ discussed treatment notations from Claimant's occupational and physical therapists. (*Id.*) The ALJ's decision also accurately outlined Plaintiff's testimony regarding Claimant's abilities and limitations, treatment Claimant received and the effects of such treatment, and Claimant's daily activities in the home and in school. (T. 22-30.) Therefore, contrary to Plaintiff's contention, the ALJ provided sufficient analysis to support his credibility determination and he supported his determination with evidence in the record.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is

**DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is

**GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: August 24, 2017

*/s/ Bill Carter*
William B. Mitchell Carter
U.S. Magistrate Judge